UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN DAVID BROCK,

    Plaintiff,

  v.                                              Case No. 19-CV-1506

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

## DECISION AND ORDER

John David Brock, who is representing himself, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed and the case is dismissed.

## BACKGROUND

On October 27, 2016, Brock filed an application for a period of disability and disability insurance benefits, alleging disability beginning May 28, 2012 (Tr. 21) due to lumbar spondylosis, left knee pain, left shoulder joint pain, sensorineural asymmetrical hearing loss with tinnitus, right elbow pain, left foot metatarsalgia, bilateral hallux valgus, bilateral plantar fasciitis, and bilateral pes valgo planus (Tr. 215). Brock's applications were denied initially and upon reconsideration. (Tr. 21.) Brock filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on August 30, 2018. (Tr. 39–75.) Brock testified at the hearing, as did Karen Schneider, a vocational expert ("VE"). (Tr. 39.)

In a written decision issued November 27, 2018, the ALJ found that Brock had the severe impairments of lumbar degenerative disc disease, degenerative joint disease of the bilateral feet, left shoulder degenerative joint disease, and clinical obesity. (Tr. 23.) The ALJ further found that Brock did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 24.) The ALJ found that Brock had the residual functional capacity ("RFC") to perform light work, with the following limitations: can frequently operate foot controls with the bilateral lower extremities; can occasionally climb ladders, ropes, or scaffolds; can frequently balance; can frequently reach overhead with the left non-dominant upper extremity; and should avoid concentrated exposure to hazards. (Tr. 24–25.)

Although the ALJ found that Brock was unable to perform any of his past relevant work, considering Brock's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Brock could perform. (Tr. 29.) As such, the ALJ found that Brock was not disabled from his alleged onset date until June 30, 2015, his date last insured. (Tr. 31.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Brock's request for review. (Tr. 1–6.)

## DISCUSSION

*1. Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a

2

conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. Application to this Case

As Brock is representing himself, I construe his arguments broadly as follows: that the ALJ erred in assessing his RFC and improperly evaluated his subjective symptoms. I will address each argument in turn.

#### 2.1 RFC Assessment

RFC is the most the claimant can do in a work setting "despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96–8p. The Administration must consider all of the claimant's known, medically determinable impairments when assessing RFC. 20 C.F.R. § 404.1545(a)(2), (e). The ALJ began the RFC assessment by recounting Brock's allegations of

disabling symptoms from low back, left shoulder, and bilateral foot pain. The ALJ acknowledged Brock's testimony that his fallen arches and bunions limited his walking and standing abilities; that he stopped working upon his doctors' recommendations to pursue different work; that he quit his job at Walmart after eight months due to his bilateral feet and knee problems; and that he experienced pain and tightness in areas such as his back, shoulder, and left knee. (Tr. 25.)

The ALJ also recounted the medical evidence. The ALJ noted that Brock presented to his primary care physician in August 2014 for low back pain that radiated down his legs to his knees after lifting a large tire onto a truck. (*Id.*) The ALJ noted that a physical examination showed "mild tenderness of the lumbar paraspinal musculature, with some decrease in flexion and lateral side bending," Brock was prescribed meloxicam, and received an osteopathic manipulation treatment. (Tr. 25–26.) The ALJ noted that Brock again complained of back pain in September 2014 and completed a short course of physical therapy. (Tr. 26.) Although no diagnostic imaging studies were performed during the relevant period, the ALJ noted, magnetic resonance imaging (MRI) studies from April 2016 revealed degenerative disc disease. (*Id.*)

Next, the ALJ noted that Brock received treatment and physical therapy for left shoulder impingement before his alleged onset date, in 2009. (*Id.*) The ALJ cited to September 2014 treatment notes where Brock complained of left shoulder pain (from the same tire-lifting activity that caused his back pain) and was prescribed a muscle relaxer and naproxen. (*Id.*) The ALJ noted that, although the record contained no diagnostic imaging studies prior to or during the relevant period, a 2017 x-ray demonstrated "mild left acromioclavicular osteoarthritis with minimal narrowing of the subacromial joint space." (*Id.*)

4

Case 2:19-cv-01506-NJ   Filed 03/10/21   Page 4 of 11   Document 18

The ALJ then recounted the medical evidence related to Brock's foot impairments, including that Brock consulted at least four podiatrists during the relevant period. (*Id.*) The ALJ noted that, consistent with 2011 x-rays of the bilateral feet, clinical examinations demonstrated mild bilateral bunion deformity and mild loss of the medial longitudinal arch, and x-rays from 2014 showed "mild degenerative changes of the bilateral great toes at the metatarsophalangeal joint and elongated second rays bilaterally, and elongated third ray on the right." (*Id.*) Moreover, the ALJ noted that Brock discussed bunionectomy surgery with each of his podiatrists, but all ultimately recommended custom orthotics. (*Id.*) Finally, the ALJ noted that Brock was clinically obese during the relevant period and that obesity had an exacerbating effect on his other severe and non-severe impairments. (*Id.*)

The ALJ limited Brock to light exertional work, finding that, due to his severe and non-severe impairments, he would likely be unable to sustain the lifting and carrying demands of medium exertional work. (*Id.*) Further, the ALJ limited Brock to occasional climbing of ladders, ropes, or scaffolds, and frequent balancing to account for his lumbar degenerative disc disease, bilateral foot degenerative joint disease, and the impact of his clinical obesity. (*Id.*) In order to accommodate Brock's reported symptoms from his bilateral foot conditions and left shoulder degenerative disc disease, the ALJ limited Brock to frequent operation of foot controls bilaterally and frequent overhead reaching with the left non-dominant upper extremity. (Tr. 26–27.) Finally, the ALJ determined that Brock should avoid concentrated exposure to hazards like unprotected heights or dangerous moving machinery due to the potential side effects of his medications, such as drowsiness. (Tr. 27.)

Brock now asserts that his diagnoses of chronic pain syndrome and fibromyalgia were ignored. (Pl.'s Br. at 1.) The record contains one treatment note with respect to chronic pain

syndrome: a February 2, 2017 visit to Dr. Michael Carl where Brock presented for a new patient evaluation of his low back pain. (Tr. 581.) Chronic pain syndrome was among Dr. Carl's impressions. (Tr. 584.) However, Dr. Carl treated Brock over a year after Brock's date last insured and did not indicate that his findings related back to the period relevant to the ALJ's decision. Moreover, Brock makes no arguments as to how his chronic pain syndrome warrants greater limitations beyond those already provided in his RFC. Therefore, remand is not warranted on this basis.

Similarly, the sole mention in the record of fibromyalgia comes from a December 6, 2018 treatment note, when Brock presented to Dr. Alejandro Garcia for back and knee pain. (Tr. 10.) Dr. Garcia noted that fibromyalgia "may be contributing to [Brock's] generalized joint pain." (Tr. 13.) However, not only does Dr. Garcia's treatment note fall outside the relevant period at issue, but the treatment note was only submitted as evidence to the Appeals Council, not the ALJ. The ALJ could not have ignored evidence that was not in the record when assessing Brock's RFC. As such, reversal is not warranted on this basis.

Brock also questions how the "ringing in [his] ears [was] not considered a detriment for hearing." (Pl.'s Br. at 1.) Brock presented with complaints of tinnitus during and after the relevant period. (Tr. 340, 372, 471, 497, 898, 912, 925.) In his Adult Function Report, Brock asserted that the ringing in his ears was constant and made it hard to concentrate. (Tr. 239, 243.) The ALJ found that Brock's tinnitus was a non-severe impairment. (Tr. 23.) In so finding, the ALJ noted that Brock displayed 100% speech discrimination scores on an April 2016 hearing evaluation and that the record showed "no evidence of functional limitation for complaints of tinnitus." (*Id.* at 24.)

It is true that the ALJ must account for a claimant's limitations from both severe and non-severe impairments in the RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Here, however, the ALJ found that there was no record evidence of functional limitations caused by Brock's tinnitus. As such, the ALJ need not have included any limitations to account for tinnitus in the RFC. Moreover, Brock has not suggested what functional limitations the ALJ should have assigned. As such, the ALJ's consideration of Brock's tinnitus does not warrant remand.

### 2.2 Evaluation of Subjective Symptoms

Brock asserts that his impairments have not improved; that there are gaps in the record with no treatment for his impairments because he could not afford to accrue more medical debt; and that he resigned from his former job due to his pain. (Pl.'s Br. at 1.) I construe these statements as a challenge to the ALJ's subjective symptom evaluation.

The Commissioner's regulations set forth a two-step test for evaluating the credibility of a claimant's statements regarding her symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant

takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.*

A court's review of a credibility, or consistency, determination is "extremely deferential." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). On judicial review, courts "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . .and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted).

The ALJ found that while Brock's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the record evidence. (Tr. 27.)

The ALJ first considered Brock's reported lumbar spine impairment symptoms. The ALJ noted that the record contained no complaints of back symptoms until approximately two years after Brock's alleged onset date, and even then, Brock "retained good physical and neurological functioning and responded well to conservative treatment." (*Id.*) The ALJ next cited to physical examinations from August and September 2014 that revealed "full range of motion in [Brock's] lumbar spine (although his flexion was painful in August), full muscle tone, no joint swelling, warmth, or pain," as well as "no tenderness to palpation or muscle spasms, intact sensation to light touch, normal reflexes in the bilateral lower extremities, and a normal gait." (*Id.*) Moreover, the ALJ noted that while an MRI later confirmed degenerative
8

disc disease, there was no evidence of nerve root involvement for Brock's radicular complaints because straight leg raise testing was negative bilaterally. (*Id.*) In addition, the ALJ noted that Brock's symptoms "improved significantly after a short course of physical therapy," as he rated his pain as three out of 10 at his initial evaluation but rated it as one out of 10 after five visits. (*Id.*) As such, the ALJ concluded that a limitation to light exertional work reasonably provided for Brock's lumbar spine symptoms. (*Id.*)

The ALJ next considered Brock's left shoulder impairment. The ALJ stated that although Brock received treatment for left shoulder pain well before his alleged onset date, the majority of the records were from December 2008 to February 2009, where Brock "exhibited full range of motion after participating in physical therapy." (*Id.*) Moreover, the ALJ noted that the record contained no complaints of left shoulder pain or functional limitation from 2009 to September 2014, and even then, Brock displayed full range of motion and no pain with internal or external rotation maneuvers. (*Id.*) The ALJ added that other clinical testing was likewise negative, and an x-ray taken two years after Brock's date last insured showed only minimal findings. (*Id.*) Therefore, to accommodate Brock's left shoulder pain, the ALJ limited to Brock to frequent rather than constant overhead reaching in his RFC. (*Id.*)

The ALJ finally considered Brock's bilateral feet degenerative joint disease. The ALJ noted that the objective diagnostic evidence showed generally only mild degenerative changes, with moderate bunion deformity on the right and three elongated toes overall. (*Id.*) The ALJ also cited findings of mostly normal functioning on podiatry examinations; records indicating that Brock exhibited no functional difficulties with his gait; Brock's denial of bunion pain; records that indicated that Brock's foot conditions were largely correctable with

custom orthotics and wider shoes; Brock's reported relief with custom orthotics; and Brock's inconsistent statements regarding the severity of his foot conditions. (Tr. 27–28.) As a result, the ALJ concluded that a limitation greater than light exertional in Brock's RFC was not warranted. (Tr. 28.)

In his brief, Brock asserts that there are gaps in his medical records because he took time to pay his medical bills and could not afford to accrue more debts. (Pl.'s Br. at 1.) In evaluating Brock's subjective symptoms, the ALJ noted that the medical record contained no complaints related to back symptoms until two years after Brock's alleged onset date of May 28, 2012, and no complaints of left shoulder pain between 2009 and September 2014. (Tr. 27.) But the ALJ did not discount Brock's alleged symptoms because of gaps in his treatment; rather, the ALJ noted that during the treatment that Brock did receive, he did not complain of back symptoms or shoulder pain. Moreover, the ALJ's decision demonstrates that the ALJ relied on various evidence in the record, including mostly normal physical examinations, diagnostic testing, and Brock's own statements, to find that Brock's alleged symptoms were not disabling. And although Brock states that his impairments have not improved and that he cannot work due to his pain (Pl.'s Br. at 1), these general assertions do not demonstrate that the ALJ's subjective symptom evaluation was patently wrong. The ALJ adequately supported the finding that Brock's alleged symptoms were not disabling with medical and other evidence in the record. Therefore, remand is not warranted on this basis.

## CONCLUSION

Brock challenges the ALJ's RFC assessment and evaluation of his subjective symptoms. I find that the ALJ's decision is supported by substantial evidence. Therefore, the Commissioner's decision is affirmed.

10

Case 2:19-cv-01506-NJ   Filed 03/10/21   Page 10 of 11   Document 18

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of March, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge